IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARJUNA WHITEHEAD, o.b.o.<br>E.W. (a minor child),<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. CIV-22-735-SM |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arjuna Whitehead brings this action on behalf of E.W., a minor child, seeking judicial review of the Commissioner of Social Security's final decision denying the claim for E.W.'s supplemental security income benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 18, 19.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) did not properly consider whether E.W.'s impairments functionally equaled the severity of a listing. Doc. 17, at 9-20. After a careful

---

[1] Citations to the parties' pleadings will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

review of the Administrative Record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.     Administrative determination.

### A.     Disability standard.

A person under the age of eighteen is disabled within the meaning of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906. No individual under the age of eighteen will be considered disabled if he or she is engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(C)(ii).

The ALJ uses a three-step sequential evaluation to determine whether an individual under the age of eighteen is disabled. 20 C.F.R. § 416.924; *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). "The [ALJ] must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237.

Pertinent to this matter, if a claimant's impairments do not meet or medically equal a listing, then an ALJ determines whether the impairments are functionally equivalent to a listing. 20 C.F.R. § 416.926a(a). To make this determination, the ALJ must analyze the evidence in terms of each of the six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). To functionally equal a listing, an impairment must cause "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a). An "extreme" limitation "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).

  **B.**   **Relevant findings.**

    **1.**   **Administrative Law Judge's findings.**

The ALJ assigned to E.W.'s case applied the standard regulatory analysis to decide whether E.W. was disabled during the relevant timeframe. AR 10-22; *see* 20 C.F.R. § 416.924(a). The ALJ found E.W.:

3

(1)     was a preschooler on January 22, 2020, the date the application was filed, and a school-aged child at the time of the decision;

(2)     had not engaged in substantial gainful activity since January 22, 2020;

(3)     had the following severe impairments: attention deficit-hyperactivity disorder, speech delay, autism spectrum disorder, incontinence, and myopia of both eyes;

(4)     had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

(5)     had no impairment or combination of impairments that functionally equaled the severity of the listings; and

(6)     had not been disabled, as defined in the Social Security Act, since January 22, 2020, the date the application was filed.

AR 11-22.

### 2. Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision. *Id.* at 1-6; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326,

1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

The Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (internal quotation marks omitted).

### B. Plaintiff contends the ALJ erred in his consideration of whether E.W.'s impairment functionally equaled a listing.

Plaintiff contends the ALJ's determination that E.W.'s impairment did not functionally equal a listing is not supported by substantial evidence. Doc. 17, at 9-20. Specifically, he contends the ALJ erred in finding E.W. had a less-

than-marked limitation in caring for himself.[2] *Id.* As part of this argument, Plaintiff asserts the ALJ did not adequately address certain evidence. *Id.* at 15. Plaintiff also asserts the ALJ did not properly consider the opinions from state agency doctors. *Id.* at 18-21. But mostly, Plaintiff appears to argue the ALJ came to the wrong conclusion. For the reasons stated below, Plaintiff's arguments lack merit.

### 1. The ALJ's consideration of E.W.'s ability to care for himself.

When addressing the domain of "caring for yourself," an ALJ considers the child's "ability to maintain a healthy emotional and physical state," including "[h]ow well children get their emotional and physical wants and needs met in appropriate ways, [h]ow children cope with stress and changes in the environment, and [h]ow well children take care of their own health, possessions, and living area." SSR-09-7p, 2009 WL 396029, at *2 (Feb. 17, 2009). This domain "involves the emotional ability to engage in self-care activities, such as feeding, dressing, toileting, and maintaining hygiene and physical health." *Id.* at *3. "[C]hildren whose mental or physical impairments affect the ability to regulate their emotional well-being may respond in

---

[2] If E.W. had at least a marked limitation in this domain, his impairments would functionally equal a listing because the ALJ found E.W. had a marked limitation in acquiring and using information. AR 14; *see also* 20 C.F.R. § 416.926a(a).

inappropriate ways." *Id.* For example, "[a] child with attention-deficit/hyperactivity disorder who has difficulty completing assignments may express frustration by destroying school materials." *Id.* That said, the domain does not concern "the ability to relate to other people, which [is] address[ed] in the domain of 'Interacting and relating with others.'" *Id.* at *2.

Analyzing this domain, the ALJ concluded:

> [E.W.] has a less than marked limitation in caring for oneself. [E.W.] is noted to be impulsive and hyperactive. He was also noted to have delayed developmental milestones in terms of potty training. His father notes that [E.W.] did not dress or brush his teeth without help or put his toys away. His special education teacher noted that he did not do well with wait time. However, the record notes that [E.W.] has been potty-trained since early 2021, and school records do not appear to indicate any toileting issues. [E.W's] father notes that he is able to eat with utensils by himself, dress and brush his teeth with help, and bathe without help. His teacher also noted no problems in caring for physicals needs, cooperating, or using good judgment. Accordingly, the evidence demonstrates that [E.W.] has a less than marked limitation in caring for oneself.

AR 19-20 (internal citations omitted).

### 2. Plaintiff contends the ALJ did not adequately address the evidence.

Plaintiff contends the ALJ's analysis was deficient because he "only briefly mentioned [E.W.'s] 'impulsive and hyperactive' behavior[] without adequately accounting for how that impacted [E.W.'s] functioning in this domain." Doc. 17, at 12. Plaintiff contends this evidence "demonstrated at least marked limitations in [E.W.'s] ability to control his behavior and manage his

7

emotional state." *Id.* at 15. He contends the ALJ "failed to adequately address this evidence" and did not explain "how E.W.'s significantly impaired functioning amounted to only a 'less than marked' limitation." *Id.* (citing *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018)).

Although the "ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Here, the ALJ did not engage in impermissible picking and choosing.

### a. The ALJ did not err in the discussion of school records.

Plaintiff notes that E.W. was expelled from pre-kindergarten after three days after he hit other children on the bus. AR 572. When E.W. was in kindergarten, he qualified for an individual education plan (IEP) which placed him in special education services for more than half of the school day. *Id.* at 379. The IEP contained goals such that E.W. should refrain from touching other students and settle minor conflicts with peers without becoming

physically aggressive during seventy-five percent of peer interactions. *Id.* at 374.

A teacher questionnaire completed by E.W.'s kindergarten special education teacher and general education teacher, stated that E.W. had obvious, daily problems with handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. *Id.* at 348. E.W.'s general education teacher wrote a narrative letter, reporting that in one day E.W. used inappropriate language, refused to complete a test, banged on a computer, hit an aide's boots as hard as he could, pushed another student during library time, elbowed a teacher aide, and walked across the hall and pushed two other students. *Id.* at 331.

E.W.'s IEP from first grade noted that he interrupted adults, had a hard time waiting, struggled to keep his hands to himself, and had trouble staying out of personal space. *Id.* at 399. The IEP contained goals such that E.W. should interact appropriately with others seventy-five percent of the time for four out of five days, would be given no more than two verbal redirections, and would refrain from touching other students during seventy-five percent of peer interactions. *Id.* at 419-20. E.W. would receive extra time for assignments, sit one-on-one for test taking, and have frequent breaks. *Id.* at 425. A teacher

reported E.W. would run away and hit his peers and expressed it was difficult to manage E.W.'s behavior. *Id.* at 460. A disciplinary log included reports that E.W. threatened to kill another student, choked a female student, punched a female student in the face, showed his penis to a male student, and punched a student and made a throat-slash gesture. *Id.* at 464.

The ALJ thoroughly summarized the evidence from E.W.'s academic sources. *Id.* at 15-18. In this discussion, the ALJ noted much of the evidence on which Plaintiff relies: (1) E.W. was expelled from pre-kindergarten; (2) E.W.'s IEP from his kindergarten year (including a discussion regarding its goals); (3) the letter from E.W.'s teacher "indicating he was using inappropriate language, would not complete his testing, and was aggressive with both peers and his teacher's aide";; (4) the questionnaire completed by his special education teacher, in which the teacher represented E.W. did not take his medication, struggled with impulsiveness including inappropriate language and physical space, needed redirection and prompting at times, and did not do well with waiting; (5) the IEP put in place for first grade; (6) the ALJ specifically referenced a goal of "receiving less than 3 verbal cues for redirection"; and (7) the report reflecting E.W. ran away from his special education teacher, hit people at recess, and acted up in class. *Id.* at 15, 17-18. Together with this evidence, the ALJ noted more benign findings from E.W.'s school records—such as that E.W. "functioned well on medication," "was very

10

independent," and "express[ed] anger and ask[ed] permission appropriately." *Id.* at 17, 19.

The ALJ did not address the disciplinary log which contained reports that E.W. threatened peers, engaged in violence toward peers, and exposed himself to a peer. *Id.* at 464. The ALJ, however, stated that he "considered all of the relevant evidence in the case record" including information from school teachers and how he functioned at school. *Id.* at 14; *see Wall*, 561 F.3d at 1070 ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (internal quotation marks and alteration omitted)). And the disciplinary log is largely cumulative to evidence that the ALJ recited – including general reports that E.W. was aggressive toward and interacted inappropriately with his peers and specific reports that he hit other students at recess. AR 17-18. Thus, the ALJ did not have an obligation to specifically address the disciplinary log. *See Brescia v. Astrue*, 287 F. App'x 626, 630 (10th Cir. 2008) ("While the ALJ did not explicitly discuss the statements of Ms. Brescia's sister and friend, we do not believe this omission is grounds for remand given the nature of their evidence, which was largely cumulative of Ms. Brescia's testimony and written statements."); *Williams v. Colvin*, 2015 WL 5333537, at *4 (D. Kan. Sept. 14, 2015) ("Although Plaintiff asserts that the ALJ did not discuss certain records and findings from [three medical providers], she has not shown [that] he was required to do so or

11

that the evidence contained therein was not cumulative of other evidence, and she cites to no evidence indicating that he ignored those records and findings."). Thus, the ALJ appropriately considered evidence from E.W.'s academic sources.

### b. The ALJ did not err in his consideration of non-school-related evidence.

Plaintiff also contends evidence outside of E.W.'s school records show E.W. had difficulty in managing his emotions. Doc. 17, at 15-16. Plaintiff directs the Court to evidence that E.W. hit his great-grandmother and father. AR 587, 642-43. E.W.'s father testified E.W. hit himself and destroyed his toys, *id.* at 68, which Plaintiff contends shows E.W. engaged in self-injurious behavior. Doc. 17, at 16 (citing 20 C.F.R. § 416.926a(k)(3)(iv)). E.W.'s pediatrician, Dr. Julia Stoltenberg, noted he was "aggressive at times" on examination. AR 646.

Plaintiff also points to psychological testing in which E.W. had an IQ of seventy-seven and a moderate level of autism functioning. *Id.* at 595-96. Further, in the Vineland-3 test, E.W. scored in the second percentile of communication and first percentile in daily living skills and socialization as compared to same-age peers. *Id.* at 596-97. One of E.W.'s lowest scoring areas was in coping skills, *id.* at 596, which Plaintiff contends relates to the

regulatory definition of caring for yourself. Doc. 17, at 17 (citing 20 C.F.R. § 416.926a(k)(1)(iv)).

Plaintiff also references two medical opinions from E.W.'s pediatrician. In June 2020, Dr. Stoltenberg completed a form intended for adults, and opined E.W. was extremely limited in his ability to be aware of normal hazards, take normal precautions, and to set realistic goals or make plans independently of others. AR 547-48. Plaintiff contends this opinion relates to E.W.'s ability to respond to circumstances in safe and appropriate ways. Doc. 17, at 17-18 (citing 20 C.F.R. § 416.926a(k)(1)(iv)). In an April 2021 medical opinion, Dr. Stoltenberg found E.W. had extreme limitation in the ability to care for himself, stating E.W. was "still working on basic activities of daily living, like toileting independently and dressing." AR 672. Addressing the domain of attending and completing tasks, Dr. Stoltenberg noted that E.W. had difficulties with impulse control. *Id.* at 671.

The ALJ did not improperly omit discussion of this evidence. The ALJ noted E.W.'s father's testimony that E.W. was "aggressive toward[] . . . his belongings," *id.* at 14, and also a medical record noting E.W. hit himself. *Id.* at 16 (citing *id.* at 642). The ALJ cited a record from Dr. Miracle Goetz noting E.W. "would become dysregulated" when she asked E.W. questions, *id.* at 16 (citing *id.* 642-43), and the record notes that E.W. hit his father or laughed uncontrollably when he became dysregulated. *Id.* at 643. The ALJ addressed

13

E.W.'s August 2020 test results and resultant diagnosis, specifically citing the pages covering the Vineland-3 section (although not reciting the precise results). *Id.* at 16 (citing *id.* at 784-85). The ALJ also referenced Dr. Stoltenberg's record which noted complaints of "aggression." *Id.* at 17 (citing *id.* at 646).

The ALJ considered Dr. Stoltenberg's opinions, finding them "unpersuasive." *Id.* at 21. In the process, the ALJ discussed how Dr. Stoltenberg supported her opinions and how consistent the opinions were with other evidence in the record—the only factors the ALJ had to discuss. 20 C.F.R. § 416.920c(b)(2). Plaintiff does not challenge the ALJ's consideration of the factors, but appears only to assert that Dr. Stoltenberg's opinions support greater limitations in E.W.'s ability to care for himself. Given the ALJ discussed the relevant factors and concluded that the opinions were not persuasive, the Court will not reweigh the evidence. *Lax*, 489 F.3d at 1084.

### c. The ALJ did not err in his consideration of the opinions from the state agency doctors.

Plaintiff contends the ALJ "more generally rel[ied] upon [the State Agency consultant's] opinions." Doc. 17, at 18. The ALJ found their prior administrative findings "somewhat persuasive" and adopted their conclusions that E.W. had less-than-marked limitations. AR 20 (citing *id.* at 76-84, 88-103). Plaintiff contends the ALJ did not "account for the discrepancies between the

14

evidence reviewed by these State agency doctors and the evidence that is now available within the record" since the opinions were made in 2020 and the most-recent medical opinion is from March 2022. Doc. 17, at 19. Plaintiff notes that at the time of the prior administrative findings, E.W. had not yet been tested for special education services. *Id.* Thus, he contends the evidence was "patently stale." *Id.* (citing *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012)).

Whether "new evidence [the SSA] receive[s] after the medical source made his or her . . . prior administrative finding . . . makes the . . . prior administrative finding more or less persuasive" is considered an "other factor" an ALJ must consider when determining the persuasive value of a prior administrative finding. 20 C.F.R. § 416.920c(c)(5). But as the Commissioner correctly notes, the ALJ need not explain how he considered the factor in the decision. *Id.* § 416.920c(b)(2); Doc. 25, at 13. Even so, the ALJ found some portions of the prior administrative findings only "somewhat persuasive" because "the complete evidence of the record is more consistent with a less than marked limitation in physical health and well-being" rather than having no limitations as the doctors opined. AR 20. Thus, the ALJ considered the effect of the newer evidence.

### d. Plaintiff's remaining argument amounts to a request to reweigh the evidence.

Plaintiff asserts that although the "ALJ was right to devote a portion of his analysis" to E.W.'s ability to perform self-care tasks, "the ALJ erred because he overemphasized E.W.'s independence in certain self-care activities, such as toileting and brushing his teeth" while failing "to appropriately consider crucial evidence, such as emotional dysregulation." Doc. 17, at 9-10, 12. Instead, Plaintiff contends "[a]n appropriate evaluation of E.W.'s ability to control his emotions, cope with stress, and deal with changes in his environment should have led the ALJ to conclude that E.W. had at least a marked limitation in the domain of 'caring for yourself.'" *Id.* at 9.

The ALJ cited appropriate factors and supported his determination with evidence from the record. Plaintiff's argument is in essence a request to reweigh the evidence, which the Court will not do. *Lax*, 489 F.3d at 1084

## III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 24th day of May, 2023.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE